IN THE UNITED STATES DISTICT COURT FOR
THE DISTRICT OF MARYLAND
(BALTIMORE DIVISION)

ARISSA NAMMACK
721 Myrth Ave
Essex, MD 21221

      *Plaintiff,*

v.

HAMPSTEAD PRE-OWNED
1111 S. Main Street
Hampstead, MD 21074

Serve:
Anthony Birdsong
547 Quarrier Court
Westminster, MD 21153

      and

PRO AM AUTOS, LLC
1111 S. Main Street
Hampstead, MD 21074

Serve:
Anthony Birdsong
547 Quarrier Court
Westminster, MD 21153

      and

ANTHONY BIRDSONG
547 Quarrier Court
Westminster, MD 21153

      *Defendants.*

Case No. **DKC 19 CV 1798**

Plaintiff, Arissa Nammack, by and through counsel, hereby files this complaint against

Hampstead Pre-Owned, Pro Ams Autos, LLC (hereinafter "dealership defendants") and Anthony

Birdsong (all defendants are collectively referred to herein as "defendants") pursuant to Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.*, alleging sexual harassment and hostile work environment, retaliation, abusive discharge, battery, assault, intentional infliction of emotional distress, negligent retention and supervision, gross negligence, and for punitive damages.

## INTRODUCTION

1.     Plaintiff was hired to work in the defendants' automotive dealerships taking internet sales calls. Soon thereafter, she was promoted to title clerk. Almost immediately after starting, plaintiff was subjected to offensive, egregious, and disgusting sexual harassment at the hands of the managing owner, Anthony Birdsong and his wife, Erica.

2.     The dealership defendants fostered and tolerated an environment where salespeople participated in unprofessional, inappropriate, and illegal activity. By way of example, there was rampant drug use on the premises and employees directed by superiors to submit forged pay stubs to lenders to secure car loans. Additionally, the managing owner engaged in inappropriate and illegal conduct ranging from making inappropriate comments about plaintiff's looks, propositions for personal relationships, including sex, gross profanity, humiliation, disrespect, groping and other inappropriate non-consensual touching.

3.     Defendants' misconduct caused plaintiff extreme emotional distress, financial loss, and damage to her reputation. Rather than stop the horrendous misconduct, the dealership defendants fired Ms. Nammack.

## JURISDICTION AND VENUE

4.     This Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331, because plaintiff's claims include deprivation of rights guaranteed by federal law.[1]

---

[1] At the time of filing this complaint, plaintiff has satisfied all exhaustion prerequisites.

5.      This Court has jurisdiction over the related Maryland state law claims pursuant to 28 U.S.C. § 1367(a) because those claims share all common operative facts with plaintiff's federal law claims, and the parties are identical.

6.      Venue is proper because defendants are located in Maryland and the controversy involves defendants' behavior in Maryland.

## THE PARTIES

7.      Plaintiff resides in Hampstead, Maryland. At all times relevant to the facts giving rise to this complaint, plaintiff was an employee of the dealership defendants taking internet calls and then as a title clerk.

8.      The dealership defendants are incorporated in the state of Maryland and own and operate dealerships in Hampstead, Maryland. These defendants are employers under Title VII, with more than 50 employees.

9.      Defendant Birdsong resides in Maryland and was, at times relevant to the facts giving rise to this complaint, the managing owner of the dealership defendants.

## FACTS

10.      Plaintiff had gone to defendants' dealership to purchase a car. While there, Mr. Birdsong helped her through the car buying process, and soon after meeting him, he offered plaintiff a job working at the dealership.

11.      Plaintiff began employment at the dealership defendants on June 12, 2017.

12.      From the outset, she was subjected to inappropriate sexual and other harassment. During her first week of work at the dealership, Mr. Birdsong and his wife took plaintiff to a personal dinner. They asked plaintiff personal questions and shared personal information about themselves.

13. During that same first week of employment, Mr. Birdsong would show plaintiff old, younger pictures of himself, most of which were of him flexing with his shirt off.

14. Mr. Birdsong also showed plaintiff a picture of his wife kissing another girl.

15. After a week or so of employment at the dealership defendants, Mr. Birdsong propositioned plaintiff to have a relationship with him. He said he wanted a girlfriend for himself and a best friend for his wife.

16. To coerce plaintiff into a relationship, Mr. Birdsong found out her personal needs and offered to pay for her schooling, pay expenses for them to travel together, allow her to miss work as she pleased, and pay for other material wants and needs.

17. During business hours and while on the dealership premises, Mr. Birdsong regularly brought plaintiff to his office for no purpose other than to engage plaintiff in personal conversation.

18. During business hours and while on the dealership premises, Mr. Birdsong continually pressured plaintiff to consider his proposal for a personal relationship with him and his wife. Mr. Birdsong would talk about the pros and cons of this relationship, including what would happen if plaintiff fell in love with either Mr. or Mrs. Birdsong and that she would be restricted from speaking to or dating other men.

19. Mr. and Mrs. Birdsong took plaintiff to dinner and shopping for clothing. Throughout dinner, the Birdsongs discussed engaging in a three-person sexual relationship with plaintiff.

20. Mr. Birdsong brought plaintiff back to his home and asked plaintiff to cuddle with he and his wife. Plaintiff refused because she felt uncomfortable.

21. Plaintiff fell asleep and woke up to Mr. Birdsong inappropriately touching her.

22.     Plaintiff was at the Birdsong home on another occasion where Mr. Birdsong touched her inappropriately and without consent. When she showed her disapproval, Mr. Birdsong attacked her, pushed her into a corner and tried to choke her.

23.     On more than one occasion, Mr. Birdsong was physically violent toward plaintiff. For example, on one occasion, after returning from lunch he headed straight towards plaintiff and grabbed her neck while she was sitting at her desk. Another salesman saw the encounter but looked away.

24.     On another occasion, during work hours and while on the dealership premises, Mr. Birdsong grabbed plaintiff's breast.

25.     On another occasion, during work hours and while on the dealership premises, Mr. Birdsong grabbed plaintiff, picked her up and refused to let her go.

26.     Another female employee confided in plaintiff that Mr. Birdsong had tried kissing her several times.

27.     Mr. Birdsong made a number of inappropriate, sexual comments around plaintiff and other employees.

28.     Mr. Birdsong also tolerated drugs on the premises.

29.     Mr. Birdsong and his wife propositioned another female employee to engage in a sexual relationship with them. The employee complied and received special treatment in her employment at the dealership defendants and expensive gifts from Mr. Birdsong. Mr. Birdsong made this known to plaintiff.

30.     Drug use was pervasive amongst the dealership employees on the premises; the owners and management were aware of the drug use but did nothing to stop or prevent it.

31. Mr. Birdsong and other dealership defendant officers instructed plaintiff and other employees to close deals by creating fake pay stubs for customers who otherwise lacked the necessary qualifications for a car loans.

32. Mr. Birdsong also paid employees in cash.

33. Plaintiff complained to Mr. Birdsong about the illegal conduct, but to no avail.

34. Mr. Birdsong's propositioning of a personal relationship with plaintiff continued. When plaintiff refused to pursue it, she was terminated.

## COUNT I
### (42 U.S.C. § 2000e *et seq.* Title VII)
### (Quid Pro Quo- Dealership Defendants)

35. Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

36. Plaintiff was employed by the dealership defendants.

37. The dealership defendants' managing owner, Mr. Birdsong made unwanted sexual advances toward plaintiff and engaged in other unwanted verbal and physical conduct of a sexual nature.

38. The job benefits were conditioned, by words or conduct, on plaintiff's acceptance of the managing owner's sexual advances and conduct.

39. The employment decisions affecting plaintiff were made based on her acceptance or rejection of those sexual advances and conduct.

40. Tangible employment actions resulted from this conduct, including termination from the dealership defendants' company.

6

41.   As a direct and proximate result of the dealership defendants' wrongful conduct, plaintiff has suffered and will continue to suffer pain and suffering, extreme and severe mental anguish, and loss of earnings.

## COUNT II
**(42 U.S.C. § 2000e *et seq.* "Title VII")**
**(Hostile Work Environment- Dealership Defendants)**

42.   Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

43.   Plaintiff is a member of a protected class on account of her sex (female).

44.   Plaintiff was repeatedly subjected to unwanted harassment such as advances for personal, sexual relationships and inappropriate touching because of her sex by the dealership defendants' managing owner.

45.   This harassment was sufficiently severe or pervasive to alter the conditions of plaintiff's employment and created an abusive, dangerous, threatening, and disrespectful working environment to which no employee should be subjected.

46.   The dealership defendants knew or should have known about the discriminatory conduct and failed to prevent it.

47.   Plaintiff suffered severe mental and emotional distress, embarrassment, humiliation, loss of reputation, and loss of earnings.

## COUNT III
**(42 U.S.C. 2000e *et seq.* Title VII)**
**(Retaliation- Dealership Defendants)**

48.   Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

49.     Plaintiff engaged in protected conduct by refusing to participate in the wrongful conduct, including the harassment she suffered.

50.     Plaintiff suffered adverse employment action, including termination.

51.     A casual link exists between the protected conduct and the adverse action because plaintiff was terminated immediately after the protected conduct.

52.     As a result of the dealership defendants' action, plaintiff suffered loss of employment, lost wages, humiliation, severe mental and emotional distress, and loss of reputation.

## COUNT IV
### (Wrongful Termination/Abusive Discharge- Dealership Defendants)

53.     Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

54.     The dealership defendants discharged plaintiff.

55.     Plaintiff's discharge violated a clear mandate of public policy to preserve the right to one's bodily integrity because the sexual harassment to which she was subjected amounted to assault and battery.

56.     Plaintiff's discharge also violated a clear mandate of public policy because plaintiff was discharged for failure to engage in wrongful acts of manipulating pay stubs and submitting to improper sexual advances. A nexus existed between plaintiff's conduct and the dealership defendants' decision to fire plaintiff.

57.     As a result of the dealership defendants' termination of plaintiff, plaintiff has suffered loss of employment, lost wages, humiliation, severe mental and emotional distress, and loss of reputation.

## COUNT V
### (Battery-All Defendants)

8

58.     Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

59.     During plaintiff's employment, defendant Birdsong intentionally, deliberately, and repeatedly touched, groped, fondled, and sexually assaulted and assualted plaintiff in an unwelcome, harmful, offensive, or insulting way.

60.     Plaintiff did not consent to this touching.

61.     These acts were committed within the scope of the dealership defendants' employment of Mr. Birdsong, inside defendants' place of business and in furtherance of defendants' interests.

62.     The dealership defendants additionally ratified this unwelcome behavior by their managing owner because they were aware of the behavior but took no action to stop it.

63.     The dealership defendants are likewise liable because Mr. Birdsong committed battery on plaintiff while acting as the alter-ego of the dealership defendants.

64.     As a direct and proximate result of defendants' wrongful conduct, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

## COUNT VI
### (Assault- All Defendants)

65.     Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

66.     During plaintiff's employment, defendant Birdsong intentionally and unlawfully threatened and attempted to threaten to cause physical harm or offensive contact with plaintiff.

67.     Mr. Birdsong had the ability to carry out the harmful or offensive contact.

9

68. Mr. Birdsong's conduct put plaintiff in reasonable apprehension of contact.

69. These acts were committed within the scope of the dealership defendants' employment of Mr. Birdsong, inside defendants' place of business and in furtherance of defendants' interests.

70. Dealership defendants additionally ratified this unwelcome behavior because they were aware of the behavior but took no action to stop it.

71. Dealership defendants are likewise liable because Mr. Birdsong committed assaults on plaintiff while acting as the alter-ego of the dealership defendants.

72. As a direct and proximate result of defendants' wrongful conduct, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

## COUNT VII
### (Intentional Infliction of Emotional Distress- All Defendants)

73. Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

74. During plaintiff's employment, Mr. Birdsong acted with extreme and outrageous conduct by sexually propositioning, exploiting, isolating, threatening, and assaulting plaintiff.

75. Through this conduct, Mr. Birdsong intended to cause, or acted with reckless disregard to cause, plaintiff emotional distress.

76. These acts were committed within the scope of the dealership defendants' employment of Mr. Birdsong, inside defendants' place of business and in furtherance of defendants' interests.

77. Dealership defendants additionally ratified this unwelcome behavior because they were aware of the behavior but took no action to stop it.

10

78.    Dealership defendants are likewise liable because Mr. Birdsong intentionally inflicted emotional distress upon plaintiff while acting as the alter-ego of the dealership defendants.

79.    As a direct and proximate result of defendants' wrongful conduct, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

### COUNT VIII
**(Negligent Supervision and Retention- Dealership Defendants)**

80.    Plaintiff hereby incorporates all of the allegations set forth in all of the foregoing paragraphs.

81.    Plaintiff's injuries were caused by the sexual harassment, battery, assault, and intentional infliction of emotional distress of the dealership defendants' managing owner, and inappropriate conduct of other managers and supervisors.

82.    The dealership defendants owed a duty to plaintiff to provide her with a safe work environment, free from illegal conduct, sexual harassment, battery, assault, and intentional infliction of emotional distress.

83.    Dealership defendants breached that duty by failing to use reasonable care in supervising and retaining their managing owner who sexually harassed, battered, assaulted and intentionally inflicted emotional distress upon plaintiff, as well as by retaining other supervisors and managers who were acting illegally and improperly.

84.    Dealership defendants were aware or should have been aware by the exercise of diligence and reasonable care that their managing owner was capable of inflicting, and indeed was inflicting, sexual harassment, battery, assault, and intentional infliction of emotional distress on plaintiff.

11

85.     As a direct and proximate result of defendants' conduct, plaintiff has suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

## COUNT IX
### (Punitive Damages- All Defendants)

86.     Plaintiff incorporates the allegations in the prior paragraphs as if fully set forth herein.

87.     Dealership defendants' managing owner acted with evil motive, actual malice, deliberate violence and oppression, and with intent to injure, and in willful disregard for the rights of plaintiff.

88.     The conduct of the dealership defendants' managing owner was outrageous or reckless toward the safety of plaintiff.

89.     In allowing and ratifying the dealership defendants' managing owner's actions while on actual or constructive notice, the dealership defendants acted with evil motive, actual malice, deliberate violence and oppression, and with intent to injure, and in willful disregard for the rights of plaintiff.

90.     As a direct and proximate result of defendants' conduct, plaintiff have suffered and will continue to suffer pain and suffering, and extreme and severe mental anguish and emotional distress.

WHEREFORE, plaintiff requests the Court enter a judgment awarding:

a.      Compensatory and punitive damages in excess of the jurisdictional limit;

b.      Compensation for earnings lost due to unlawful discharge;

12

c.   Plaintiff's attorneys' fees and costs pursuant to 42 U.S.C. §

2000e-5(k); and

d.   And such other relief as is necessary and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues triable to a jury.

Respectfully submitted,

*[signature]*

721 MRYth Ave

ESSex, MD 21221

June 19th, 2019
443-455-4433